# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

NICK J. MARTIN,           )
                                     )
        **Plaintiff,**       )
                                     )
   **v.**                    )       **CAUSE NO. 1:13-cv-00016-SLC**
                                     )
GEORGE JONES, *et al.*,      )
                                     )
        **Defendants.**     )

## OPINION AND ORDER

Before the Court is a motion for partial summary judgment (DE 97) filed by Defendants Jones Auto, Jones Auto Repair, George Jones ("George"), his wife, Emma S. Jones ("Emma"), and their son, Trent Jones ("Trent") (together, the "Jones Defendants"),[1] asserting that they are entitled to judgment as a matter of law on *pro se* Plaintiff Nick Martin's claims of unpaid wages, racial discrimination under Title VII and 42 U.S.C. § 1981, retaliation under Title VII and § 1981, and defamation.[2] The matter is ripe for ruling. (DE 98; DE 101).

For the following reasons, the Jones Defendants' motion for partial summary judgment will be GRANTED.

---

[1] Martin also named Richard England ("England") as a Defendant, but Martin's claims against England were automatically stayed on June 16, 2015, after England filed bankruptcy. (DE 93).

[2] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 41; DE 70).

# I.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Id.* (citations omitted).  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants."  *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial."  *Id.* at 771.

More pointedly, the burden is *not* on the party moving for summary judgment "to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Rather "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.*  In fact, "district courts are widely acknowledged to possess the power to enter

summary judgments *sua sponte*, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence." *Id.* (citations omitted); *accord Jones v. Union Pacific Co.*, 302 F.3d 735, 740 (7th Cir. 2002).

## II. FACTUAL BACKGROUND

### A. *Martin Failed to Produce Any Affidavits or Documentary Evidence in Response to the Motion for Summary Judgment*

On July 9, 2015, the Court issued a notice to Martin, along with a copy of Federal Rule of Civil Procedure 56 and Local Rule 56-1, informing him that the Jones Defendants had filed a motion for summary judgment. (DE 100). The notice informed Martin of his obligation to respond to the motion for summary judgment, cautioning that the Court would accept the factual assertions presented by the Jones Defendants in the affidavits and documents they submitted with their motion as true unless Martin provided "affidavits or other documentary evidence contradicting the assertion." (DE 100 at 1); *see Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992).

The Court further warned Martin that failure to respond with such affidavits or other documentary evidence contradicting the Jones Defendants' factual assertions "would be the equivalent of failing to present any evidence in [his] favor at a trial." (DE 100 at 1). The notice informed Martin that if he chose to respond to the motion for summary judgment, his "response must include or be supported by sworn statements or other responsive materials," and warned that he could not "merely rely upon any conflict or inconsistency between the contents of the complaint and the affidavit(s) or other sworn materials filed in support of Defendants' motion." (DE 100 at 2).

Additionally, the notice explained that if Martin chose to submit "affidavit or affidavits in support of [his] response, the facts in the affidavits must be personally known to the person making the affidavit and not be hearsay; the facts must be specific and not general." (DE 100 at 2). The Court made clear that "[m]erely denying the facts in the sworn material filed by Defendants in support of their motion or giving opinions or beliefs is not enough." (DE 100 at 2). Finally, the Court warned Martin that failure to "respond to the summary judgment motion with sworn statements which contradict important facts claimed by Defendants in their sworn materials" would result in Martin "los[ing] this lawsuit, in whole or in part, if the Court determines that, under those unchallenged facts, Defendants are entitled to judgment under the law." (DE 100 at 2).

Martin filed a two-page response to the Jones Defendants' summary judgment motion (DE 101), attaching several handwritten documents that he had previously filed with the Court (DE 15 at 1, 3; DE 52 at 9; DE 96). Martin's handwritten documents, however, do not reflect that they were sworn as true before a notary public or under the penalty of perjury, or even that he was in the presence of a notary.

Although this Court will construe all evidence in a light most favorable to Martin, the non-moving party, when deciding summary judgment, *Xiong v. Wagner*, 700 F.3d 282, 288 (7th Cir. 2012); *Payne*, 337 F.3d at 770, the Court "cannot consider evidentiary materials that are not properly before it," *Bodor v. Town of Lowell*, No. 2:05-CV-268, 2007 WL 1035085, at *7 (N.D. Ind. Mar. 28, 2007) (citing *Averhart v. Arrendondo*, 773 F.2d 919 (7th Cir. 1985)). "The Court simply cannot overlook the requirements of the federal rules of evidence or civil procedure, especially the requirements set for[th] in Federal Rule 56[(c)(1)], when evaluating a *pro se*

plaintiff's materials filed in opposition to a motion for summary judgment." *Bodor*, 2007 WL

1035085, at *7 (citing *Averhart*, 773 F.2d 919).  It is for this precise reason that the Court

notified Martin of his obligations when responding to the Jones Defendants' summary judgment

motion.  *Id.*

Accordingly, because Martin's statements were not made under oath in the presence of a

notary and do not state that they were made under penalty of perjury, the Court will not consider

his unsworn statements as establishing any factual evidence when evaluating the motion for

summary judgment.[3]  *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) ("An unsworn

statement does not meet the requirements of Rule 56[(c)(4)]." (citing *Adickes v. S.H. Kress &

Co.*, 398 U.S. 144, 159 n.19 (1970))).

### B.  Summary of Relevant Facts

Jones Auto or Jones Auto Repair is a business engaged in the repair and maintenance of

vehicles.[4]  (DE 98-1 at 4).  Martin claims that he first worked for George, Jones Auto, and

England as a mechanic and in cleaning up the property from June to August 2009 and from

August to October 2010, and that these Defendants promised him a wage of $50 a day to do so.[5]

---

[3] The Jones Defendants submitted in support of their motion the Charge of Discrimination that Martin filed with the City of Fort Wayne Metro Human Relations Commission (the "Commission") on July 31, 2012.  (DE 98-1 at 27).  That document was signed by Martin under the penalty of perjury and contains a notary's signature, and thus, Martin's statements in that document will be considered.

[4] "Jones Auto" and "Jones Auto Repair" appear to be assumed names for Jones Auto Repair, Inc., which is located at 1701 S. Anthony Blvd., Fort Wayne.  (DE 98-1 at 4; DE 94 at 1).  Defendants' discovery responses reflect that George solely owns the business and that England leases space from George and Emma, who jointly own the real estate where the business is located.  (DE 94 at 2; DE 90 at 1).

[5] The Jones Defendants assert in their Statement of Material Facts, which is supported by George's affidavit, that at no time did George individually or on behalf of Jones Auto "have or employ Martin as an employee or independent contractor." (DE 98 at 3).  But this statement is a legal conclusion, not a fact.  *See Aberman v. Aboutchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998) ("The ultimate question of whether an individual is an employee or an independent contractor is a legal conclusion which involves application of the law to the facts."

5

(DE 98-1 at 12-14, 27).

When he did not receive the wage of $50 a day, Martin in November 2010 filed a small claims suit in Allen Superior Court, Cause No. 02D01-1011-SC-19776, against George, Jones Auto Body, and England, seeking unpaid wages in the amount of $6,000. (DE 98-1 at 1, 6). After a trial, Magistrate Judge Jerry L. Ummel found that although Martin "went to work" for England in 2009 and again in 2010, "[t]here was never a written agreement between the parties," Martin "was not able to establish any specific terms of a verbal agreement between the parties[,]" and Martin "failed to prove that the [d]efendants owe[d] him any specific amount in unpaid wages." (DE 98-1 at 8). Accordingly, Judge Ummel entered an "Order or Judgment of the Court" in favor of the defendants. (DE 98-1 at 8). Martin later filed a motion to correct errors, which Judge Ummel denied. (DE 98-1 at 10-16).

Martin claims that he went back to work for George or Jones Auto Repair two years later, on April 22, 2012, again at the wage of $50 a day. (DE 98-1 at 27). When he did not receive that wage, Martin quit on June 4, 2012. (DE 98-1 at 27). On June 19, 2012, he filed an Application for Wage Claim with the Indiana Department of Labor, asserting that he was owed $2,429.50 in unpaid wages for April 22, 2012 through June 4, 2012. (DE 52-1 at 84). George, in his capacity as President of Jones Auto, completed a Wage Claim Response Form on July 13, 2012, stating that Martin was not employed or contracted by Jones Auto Repair and that George only "let him clean up the property" because Martin needed money for gasoline and cigarettes.

---

(citation omitted)). As such, the Court will not accept this alleged "fact." *See Phillips v. Quality Terminal Serv., LLC*, 855 F. Supp. 2d 764, 771-72 (N.D. Ill. 2012) (articulating that the legal conclusions offered by the parties in their statements of fact would not be accepted by the court as "facts").

(DE 101 at 13).

On July 31, 2012, Martin, who is black, filed a Charge of Discrimination with the Commission, asserting that he was discriminated against on the basis of his race because Jones Auto Repair paid him sporadically and at a wage less than $50 per day, while it paid a white mechanic on a weekly basis. (DE 98-1 at 27). The Commission dismissed the case on December 19, 2012. (DE 98-1 at 28-29).

On October 18, 2012, George filed a Petition for an Order for Protection and Request for a Hearing in Allen Superior Court, Cause No. 02001-1210-PO-3248, writing that Martin was calling him every day and asking for money; that Martin threatened him by stating that "[Martin] was going to put a bullet in him"; and that Martin was "on drugs." (DE 98-1 at 21-26). The court that same day issued an "Ex Parte Order for Protection," ordering Martin to cease contacting George and to stay away from George's business. (DE 52-1 at 4-6).

On January 17, 2013, Martin filed this case against George, Jones Auto, and England, seeking to recover unpaid wages for the work he purportedly performed for George, Jones Auto, and England from June to August 2009 and August to October 2010, and for the work he purportedly performed for George and Jones Auto from April 22, 2012, through June 4, 2012. (DE 1). Martin indicated that his complaint was brought pursuant to Title VII, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and § 1981. (DE 1).

On August 28, 2014, the Court conducted a Rule 16(b) preliminary pretrial conference, setting a discovery deadline of December 31, 2014. (DE 40). On October 14, 2014, Martin, with leave of Court, filed an amended complaint, adding claims of racial discrimination, retaliation, and defamation, and naming Emma, Trent, and Jones Auto Repair as additional Defendants. (DE

51; DE 52).  In the amended complaint, Martin claims that Defendants discriminated against him by paying him more sporadically and at a lesser wage than a white employee and retaliated against him for filing his state law claim for unpaid wages in 2010 by making false comments to the police to get a protection order against him and by George calling him "a crack head and other comments" in state court.  (DE 52 at 2).  Martin also asserts a claim of defamation based on George's alleged statements to the police and in state court.  (DE 52 at 2).  Martin indicated in his amended complaint that he was bringing these claims pursuant to Title VII and § 1981.  (DE 52).

On June 16, 2015, this Court set a dispositive motion deadline of July 13, 2015.  (DE 92). The Jones Defendants filed the instant motion on July 9, 2015 (DE 97), and that same day the Court issued a notice to Martin, as the *pro se* plaintiff, concerning the motion for summary judgment (DE 100).  Martin filed his response to the summary judgment motion on July 13, 2015 (DE 101); the Jones Defendants did not file a reply brief.

At no time from 2008 through the date the Jones Defendants filed their motion for summary judgment did George, Jones Auto, or Jones Auto Repair ever employ more than five employees for each working day in each of 20 calendar weeks in any calendar year.  (DE 98-1 at 4).

### III.  DISCUSSION

#### A.  *Martin's Unpaid Wage Claims for 2009 and 2010*

Martin asserts that the Jones Defendants failed to pay him for wages earned from June through August 2009, from August through October 2010, and from April through June 2012. Martin does not identify under what legal authority he is proceeding, but presumably he is

advancing either a state law breach of contract claim or a claim under the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1 *et seq*., which applies when an employee leaves his employment voluntarily.

The Jones Defendants seek summary judgment in their favor on Martin's unpaid wage claim for the periods in 2009 and 2010 on the grounds of *res judicata*. Martin's small claims lawsuit in state court filed in November 2010 sought $6,000 in unpaid wages for the work he allegedly performed for George, Jones Auto Body, and England in 2009 and 2010, which are the same wages he seeks to recover here for that time period. (DE 98-1 at 6, 12; *see* DE 52 at 2). The state court denied Martin's claim on the merits and entered a judgment in favor of the defendants. (DE 98-1 at 8). Martin then filed a motion to correct errors, which was also denied. (DE 98-1 at 10-15).

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect they would have in state court." *Licari v. City of Chi.*, 298 F.3d 664, 666 (7th Cir. 2002) (citations omitted). Therefore, the Court must look to Indiana state law to determine whether its courts would preclude Martin's unpaid wage claims against the Jones Defendants for 2009 and 2010. *See Douglas v. City of Bloomington*, No. 1:13-CV-0080-LJM-VSS, 2004 WL 828324, at *3 (S.D. Ind. Mar. 9, 2004). "In Indiana, the elements of *res judicata*, or claim preclusion, are: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the matter at issue was, or might have been, determined in the former suit; (3) the controversy adjudicated in the former suit was between parties to the present suit; and (4) the judgment in the former suit was rendered." *Id*. (citing *Leal v. Krajewski*, 803 F.2d 332, 334 (7th Cir. 1986); *Peterson v. Culver Educ. Found.*, 402 N.E.2d 448, 460 (Ind. Ct. App.

1980)).

All four of the elements of *res judicata* are satisfied with respect to George and Jones Auto Body.  The state court found that Martin "went to work" for England in 2009 and 2010, but that Martin failed to establish any specific terms of a verbal agreement between the parties.  (DE 98-1 at 8).  The court concluded that Martin failed to prove that George, Jones Auto Body or England owed Martin any specific amount in unpaid wages, and thus, entered judgment in these defendants' favor.  (DE 98-1 at 8).

Although Martin did not name Emma, Trent, "Jones Auto," or "Jones Auto Repair" as defendants in the state court suit, these Defendants are "in privity" with George and Jones Auto Body, and thus, Martin "cannot relitigate the issues decided against [him]" in the state court suit. *Studio Art Theatre of Evansville, Inc. v. City of Evansville, Ind.*, 76 F.3d 128, 131 (7th Cir. 1996).  "Parties are in privity when there is a commonality of interest between the two entities and when they sufficiently represent each other's interests." *Id.* (citations and internal quotation marks omitted).  Here, the familial relationship among the individual Defendants and the small size of the Jones Auto business make it clear that the interests of Emma, Trent, Jones Auto, and Jones Auto Repair are "closely related to" George and Jones Auto Body. *Tartt v. Nw. Cmty. Hosp. & Nw. Cmty. Anesthesiologists, Ltd.*, 453 F.3d 817, 822 (7th Cir. 2006).  As such, *res judicata* bars Martin's unpaid wages claim for 2009 and 2010 against Emma, Trent, Jones Auto, and Jones Auto Repair as well, even though they were not named in state court.  Accordingly, the Jones Defendants' motion for summary judgment on Martin's unpaid wages claim for the periods

in 2009 and 2010 will be granted.[6]

### B. Title VII Racial Discrimination and Retaliation Claims

The Jones Defendants also seek summary judgment in their favor on Martin's claims of racial discrimination and retaliation under Title VII. They emphasize that they have never employed more than five employees for each working day in each of 20 calendar weeks in any calendar year of 2008 through 2015, and thus, that Title VII does not apply.

To be subject to liability under Title VII, a person or entity must employ 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 42 U.S.C. 2000e(b); *see Arbaugh v. Y&H Corp*., 546 U.S. 500, 515 (2006) (holding that the threshold number of employees for application of Title VII is an element of a plaintiff's claim, rather than a jurisdictional issue). It is undisputed that Jones Auto or Jones Auto Repair employed less than this threshold requirement throughout the relevant period. (DE 98-1 at 4, 29; DE 52-1 at 91; DE 90 at 16). Furthermore, as to the individual Defendants, "the well-settled law in the Seventh Circuit rejects Title VII claims against individuals." *Harwood v. Gurley-Leep Auto. Sales, LLC*, No. 2:12-CV-213-JD, 2012 WL 5985630, at *2 (N.D. Ind. Nov. 29, 2012) (collecting cases).

Therefore, Martin is unable to establish this element of a *prima facie* case under Title VII, mandating summary judgment in the Jones Defendants' favor on all of his Title VII claims. *See, e.g.*, *McCloud v. Crusader Newspaper Grp.*, No. 2:07-CV-366, 2010 WL 2044711, at *3-4 (N.D.

---

[6] As stated earlier, the Jones Defendants did not move for summary judgment on Martin's unpaid wages claim based on the period of April 22, 2012, through June 4, 2012. Furthermore, the record reflects a genuine issue of material fact whether Martin was hired as an employee or entered into a contract with George or Jones Auto to perform work during that time period, as Martin claims in his Charge of Discrimination, which was sworn under oath, that he was hired by Jones Auto Repair as a mechanic on April 21, 2012. (DE 98-1 at 27).

Ind. May 24, 2010) (granting summary judgment in defendant's favor where the uncontroverted evidence established that it employed less than 15 employees at all relevant times); *Paige v. Dora*, No. 1:07-cv-011, 2007 WL 3333338, at *2 (N.D. Ind. Nov. 7, 2007) (dismissing plaintiff's Title VII claims against the individual defendants where they did not independently meet the definition of "employer" set forth in Title VII).

### C. Discrimination Claim Under § 1981

The Jones Defendants also seek summary judgment in their favor on Martin's § 1981 racial discrimination claim. Martin claims that the Jones Defendants discriminated against him by paying him only sporadically and at less than the promised rate of $50 a day, when they paid a white employee every week.

"Section 1981 bars employers from discriminating and retaliating against employees based on the employee's race or national origin."[7] *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n.4 (7th Cir. 2006)). "Race and national origin discrimination claims can be established in one of two ways: the direct and indirect methods of proof." *Id.* (citing *Naficy v. Ill. Dept. of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012)). "Direct evidence requires an admission of discriminatory intent, while circumstantial evidence typically includes: (1) suspicious timing, ambiguous oral or written

---

[7] "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, *so long as the plaintiff has or would have rights under the existing or proposed contractual relationship.*" *Domino's Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1250 (2006) (emphasis added); *see Hoosier v. Greenwood Hospitality Mgmt., LLC*, 32 F. Supp. 3d 966, 974 (N.D. Ill. Mar. 26, 2014) ("The phrase 'make and enforce contracts' prohibits racial discrimination in the employment context, including harassment, discharge, promotion, transfer, retaliation and hiring." (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004))). Construing the facts in the light most favorable to the non-moving party, Martin satisfies this contractual element for purposes of summary judgment by stating under oath in his Charge of Discrimination that Jones Auto Repair hired him as a mechanic in April 2012 at the wage of $50 a day. (DE 98-1 at 27).

statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014)).

Under the indirect method, a plaintiff has the burden of establishing a *prima facie* case of discrimination by showing that: "(1) he is a member of a protected class; (2) he met the employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Id.* at 809 (citing *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)). "A similarly situated employee is one whose performance, qualifications, and conduct are comparable in all material respects."[8] *Id.* (citation and internal quotation marks omitted).

Martin, who is black, claims in one of the attachments to his response to the summary judgment motion that the Jones Defendants, who are also black, intended to discriminate against him on the basis of race. Martin claims that "the Defendant"—he does not allege which one, but presumably George—intentionally discriminated against him by calling him names that included racial epithets. (DE 101 at 9). As explained at the outset, however, the Court cannot consider Martin's statement concerning the purported racial epithets because Martin did not make the statement under oath in the presence of a notary or under penalty of perjury. As such, Martin's

---

[8] If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to state "a legitimate, nondiscriminatory reason for the employment action." *Id.* at 809-10 (citation omitted). If the defendant does so, the burden shifts back to the plaintiff, "who must present evidence that the stated reason is a 'pretext,' which in turn permits an inference of unlawful discrimination." *Id.* (citation omitted).

statement about the name-calling is not admissible for the Court's consideration of the motion for summary judgment.  *See Pfeil*, 757 F.2d at 859.

Furthermore, Martin does not specify when this purported name-calling occurred.  (DE 101 at 9).  As such, even if George harbored racial animus, Martin has not shown that such racial animus had any effect on George's decision not to pay Martin consistently and at the wage of $50 a day.  Isolated comments of racial bias are insufficient to establish that a particular decision was motivated by discriminatory animus, except when the remarks are made by the decision maker "(1) around the time of, and (2) in reference to, the adverse employment action complained of." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) (quoting *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652-53 (7th Cir. 2000)); *see Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) ("[A] particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." (citations omitted)).  Martin has failed to make such a showing.[9]

Turning to the indirect method, Martin argues that he was treated less favorably because

---

[9] With respect to the alleged racial epithets, Martin did not specifically advance a § 1981 claim of racially hostile work environment in his Charge of Discrimination or amended complaint (DE 52 at 1-2), although one attachment to his amended complaint could imply such a claim (DE 52 at 9).  To succeed on a claim of racially hostile work environment, a plaintiff must show that "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive working environment that seriously affected his psychological well-being; and (4) there is a basis for employer liability." *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004) (citation omitted).

Even if Martin had advanced a § 1981 racially hostile work environment claim, Martin mentions George's alleged racial epithets in just one attachment to his summary judgment response, which, as stated above, is an unsworn document, and thus, is not admissible evidence for consideration on summary judgment.  *See Pfeil*, 757 F.2d at 859.  Furthermore, Martin does not describe the frequency of such purported name-calling.  As such, on this record, a reasonable factfinder could not conclude that the working environment was objectively hostile.  *See id.* at 477 ("[A] plaintiff's *repeated* subjection to hearing [the word "n——r"] could lead a reasonable factfinder to conclude that a working environment was objectively hostile." (emphasis added) (citations omitted)).

14

the Jones Defendants "paid a person of white race at a higher rate and [in a] consis[tent] way." (DE 101 at 9). More specifically, in his Charge of Discrimination Martin stated that he worked as a mechanic for Jones Auto Repair and that Jones Auto Repair failed to timely pay him the $50 a day as promised, but that "there was a white mechanic who was paid on a weekly basis." (DE 98-1 at 27).

Martin, however, does not identify this white mechanic by name or explain how he is similarly situated. (DE 101 at 9). A similarly situated employee is one who is "directly comparable to [the plaintiff] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). Although the relevant factors may vary depending on the case, a court should consider whether the plaintiff and the purportedly similarly situated employees had the same supervisor; were subject to the same standards; and had comparable experience, education, and other qualifications. *Id.* (citations omitted). A plaintiff need not be completely comparable, but must be substantially similar to the more favorably treated employees. *Radue v. Kimberly-Clark*, 219 F.3d 612, 618 (7th Cir. 2000).

Martin does not submit any evidence, affidavit or otherwise, to show that a similarly situated employee outside of his protected class was treated more favorably than him. *Tank*, 758 F.3d at 805. Other than referring to himself and the white employee both as mechanics, Jones does not state whether the white mechanic had the same supervisor; was subject to the same standards; worked similar hours; and had comparable experience, education, and other qualifications. *Patterson*, 281 F.3d at 680; *see, e.g.*, *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir. 1997) ("[F]ull-time employees are simply not similarly situated to part-time employees. There are too many differences between them[.]"). Nor does Martin point to the

nearly 600 pages of banking and checkbook records that the Jones Defendants produced in

discovery in an effort to show how any employees were paid differently. (DE 94-1 to DE 94-4).

"[C]onclusory allegation[s] are insufficient to raise a genuine issue of material fact." *Anderson*

*v. Donahoe*, 699 F.3d 989, 996 (7th Cir. 2012). "It is not the duty of the court to scour the record

in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party

bears the responsibility of identifying the evidence upon which he relies." *Randall v. Rolls-*

*Royce Corp.*, 742 F. Supp. 2d 974, 980-81 (S.D. Ind. 2010) (citing *Harney v. Speedway*

*SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008); *Bombard v. Fort Wayne Newspapers,*

*Inc.*, 92 F.3d 560, 562 (7th Cir. 1996)); *see Damon v. Grand Trunk W. R.R., Inc.*, No. 2:05-CV-

60, 2006 WL 2699736, at *5 (N.D. Ind. 2006) ("The Court will not do a party's legal research for

it nor make a party's arguments for it." (citing *Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir.

1995)).

Therefore, because Martin has not produced evidence—in contrast to merely unsupported

assertions—of racial discrimination under either the direct or indirect methods, his § 1981

discrimination claim against the Jones Defendants will not survive summary judgment. *See*

*Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (Summary judgment is "not a dress

rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show

what evidence it has that would convince a trier of fact to accept its version of events." (citation

omitted)).

### D. Retaliation Claim Under § 1981

The Jones Defendants also seek summary judgment in their favor on Martin's § 1981

claim of retaliation. Martin alleges that the Jones Defendants retaliated against him for filing a

claim in state court for unpaid wages in November 2010; specifically, Martin contends that

George retaliated against him by making false comments to the police to obtain a protective order

against him in 2012 and by referring to him as a "crack head" during the state court proceedings.

(DE 52 at 2).

 "In the context of laws governing employment rights, 'unlawful retaliation occurs when

an employer takes an adverse employment action against an employee for opposing

impermissible discrimination.'" *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) (quoting

*Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003)).  "The substantive standards and

methods of proof that apply to claims of racial discrimination and retaliation under Title VII also

apply to claims under § 1981."  *Id.* (citation omitted).  Therefore, a plaintiff may establish

unlawful retaliation "using either the direct or indirect method of proof."  *Stephens v. Erickson*,

569 F.3d 779, 786 (7th Cir. 2009) (citation omitted).

To avoid summary judgment under the direct method of proof, a plaintiff must show: (1)

he engaged in statutorily protected activity; (2) defendant took a materially adverse action against

him; and (3) a causal connection between the two.  *Smith*, 681 F.3d at 896 (citing *Coleman v.

Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012)).  "Under the indirect method, the first two elements

remain the same, but instead of proving a direct causal link, the plaintiff must show that he was

performing his job satisfactorily and that he was treated less favorably than a similarly situated

employee who did not complain of discrimination."[10]  *Stephens*, 569 F.3d at 786 (citations

---

[10] "Once a plaintiff establishes the *prima facie* case under the indirect method, the defendant must articulate
a nondiscriminatory reason for its action; if he does, the burden remains with the plaintiff to demonstrate that the
defendant's reason is pretextual."  *Id.* (citations omitted).

omitted).

Martin bases his retaliation claim on the fact that he filed a claim for unpaid wages in small claims court in November 2010, one month after he quit working. (DE 101 at 1). The record, however, does not reflect that Martin ever asserted in the state case that his alleged unpaid wages were due to race discrimination. (DE 52-1 at 54-58, 99-107). As such, any claim of retaliation based on Martin's filing his state court lawsuit fails at the outset because there is no evidence that Martin engaged in statutorily protected activity. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664 (7th Cir. 2006) (dismissing retaliation claim where the plaintiff did not complain about discrimination resulting from a protected class, and thus, did not engage in statutorily protected activity).

The first evidence that Martin ever complained of racial discrimination was in his Charge of Discrimination filed with the Commission on July 31, 2012. (DE 98-1 at 27). There he alleged that he was discriminated against on the basis of his race with respect to unpaid wages from April 22, 2012, to June 4, 2012. (DE 98-1 at 27). Thus, July 31, 2012, is the first time that Martin engaged in statutorily protected activity.

By July 31, 2012, however, Martin had already quit working for George, Jones Auto, or Jones Auto Repair. Consequently, there is no evidence that the Jones Defendants took a material adverse action against Martin in the workplace; nor does Martin complain of any materially adverse action in the workplace. Rather, Martin contends that on October 18, 2012, George made false statements to the police in order to obtain a protective order against him and then called him a "crack head" during that state court proceeding. (DE 101 at 1; DE 52-1 at 2-12).

"An employer can effectively retaliate against an employee by taking actions not directly

18

related to his employment or by causing him harm *outside* the workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (citations omitted); *see Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984 (10th Cir. 1996) (finding actionable retaliation where an employer filed false criminal charges against a former employee who complained of discrimination). "A provision limited to employment-related actions would not deter the many forms that effective retaliation can take." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 63. A plaintiff must show that the adverse action taken against him was materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citation omitted). "Initiation of criminal charges is the type of adverse action that could deter an employee from making a charge of discrimination." *Kuntzman v. Wal-Mart*, 673 F. Supp. 2d 690, 715 (N.D. Ind. 2009). Likewise, filing a petition for a protective order against an employee could easily dissuade a reasonable worker from advancing a charge of discrimination.

Nevertheless, Martin must also prove causation—that "but for" the protected act, he would not have suffered the adverse employment action. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). Here, George filed the petition for protective order approximately 10 weeks after Martin filed the Charge of Discrimination with the Commission complaining of discrimination.

A close temporal connection between the protected act and the adverse employment action, without more, is insufficient to support an inference of causation. *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008). That is, "[s]peculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation[,]" as "[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second . . . ." *Burks*

*v. Wis. Dept. of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006) (citations omitted) (alterations in original).  Specifically, a two-month time frame separating the filing of a charge of discrimination and the adverse employment action, absent other evidence, does not give rise to an inference of retaliation.  *See Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 666 (7th Cir. 2011); *see also Argyropoulos*, 539 F.3d at 734 ("The approximate seven-week interval between [the plaintiff's] sexual harassment complaint and her subsequent arrest/termination does not represent that rare case where suspicious timing, without more, will carry the day.").  Therefore, because Martin has not pointed to other evidence to support causation, his retaliation claim fails under the direct method.

To establish a retaliation claim under the indirect method, Martin must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination."  *Stephens*, 569 F.3d at 786 (citations omitted).  Like his discrimination claim, Martin's retaliation claim fails under the indirect method because he has not identified a similarly situated individual who did not complain of discrimination.  Therefore, the Jones Defendants' motion for summary judgment will also be granted with respect to Martin's § 1981 retaliation claim.

## E.  Defamation

Finally, the Jones Defendants seek summary judgment in their favor on Martin's state law claim of defamation.  Martin claims that George defamed him in small claims court in December 2010 by referring to him as a "crackhead" and again in October 2012 by making false statements to the police and the court when obtaining a protective order against him.  (DE 101 at 1; *see* DE 98-1 at 21-26).

Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999) (citation omitted). "A plaintiff must generally prove four elements to prevail on a defamation claim: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *LDT Keller Farms, LLC v. Brigitte Holmes Livestock Co.*, No. 1:08-CV-243, 2010 WL 2608342, at *2 (N.D. Ind. June 25, 2010) (citing *Newman v. Jewish Cmty. Ctr. Ass'n of Indianapolis*, 875 N.E.2d 729, 735 (Ind. Ct. App. 2007)).

Again, Martin's claim fails because he did not submit admissible evidence in support of it. As explained earlier, Martin cannot survive summary judgment based solely on his conclusory assertions that George made statements with a defamatory imputation about him in state court proceedings. *See Pfeil*, 757 F.2d at 859. The only admissible evidence of record concerning George's purported defamatory statements is his petition for protective order filed in state court in 2012. In that petition, George stated that Martin "threatened [him]" and "said that he was going to put a bullet in [George]." (DE 98-1 at 23). When asked to describe the incident, George further wrote that Martin "call[ed] every day asking for money" and that Martin "is on drugs." (DE 98-1 at 23).

"Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements." *Sharkey v. Cochran*, No. 1:09-cv-0517-JMS-DKL, 2012 WL 967057, at *3 (S.D. Ind. Mar. 21, 2012) (quoting *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008)). "This rule is based on the necessity of 'preserving the due administration of justice by providing actors

in judicial proceedings with the freedom to participate without fear of future defamation claims.'" *Id*. (quoting *Hartman*, 883 N.E.2d at 777). Likewise, "communications to law enforcement officials in connection with the reporting of suspected criminal activity are qualifiedly privileged." *Webster v. City of Indianapolis*, No. 1:10-cv-1622-SEB-DML, 2012 WL 4467558, at *9 (S.D. Ind. Sept. 26, 2012) (citing *Kelley v. Tanoos*, 865 N.E.2d 593, 600 (Ind. 2007)).

George's "application for protective order is undisputedly a judicial proceeding, and the Indiana Supreme Court has held that an absolute privilege protects statements made in the course of a judicial proceeding regardless of the truth or motive behind those statements." *Sharkey*, 2012 WL 967057, at *4. "[T]he privilege is withdrawn only when the statements are so palpably irrelevant to the subject matter of the controversy that no reasonable person could doubt its irrelevancy and impropriety." *Badger v. Greater Clark Cty. Schs.*, No. 4:03-CV-0101 SEB-WGH, 2005 WL 645152, at *8 (S.D. Ind. Feb. 15, 2005) (citing *Stahl v. Kincade*, 192 N.E.2d 493, 497 (Ind. App. 1963)). Here, the statements George made in his petition for a protective order are relevant and pertinent to the judicial proceeding, and thus, the privilege protects those statements. As a result, George's statements in the petition do not support a defamation claim.

In sum, because George's statements in the petition for protective order are privileged, and because Martin did not produce any other admissible evidence of defamatory statements, summary judgment will also be entered in the Jones Defendants' favor on Martin's state law defamation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment (DE 97) is GRANTED, and all of Martin's claims against Defendants George Jones, Jones Auto, Trent

Jones, Emma S. Jones, and Jones Auto Repair are dismissed, with the exception of Martin's claim against these Defendants for unpaid wages for the period of April 22, 2012, through June 4, 2012, which survives.[11]  Additionally, all of Martin's claims against Defendant Richard England, which are presently stayed due to England's bankruptcy filing, remain.

SO ORDERED.

Entered this 2nd day of December 2015.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[11] "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (citation omitted).  An exception to that rule of thumb exists when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; substantial judicial resources have already been committed; or when it is "absolutely clear" how the pendent claims can be decided. *Id.* (citation omitted).  Here, to the extent that Martin's unpaid wages claim for 2012 is subject to a two-year statute of limitations, *see* Ind. Code § 34-11-2-1, that time has now run.  Furthermore, substantial judicial resources have already been committed to this case.  In any event, Martin's federal claims still survive against England, and thus, not all of the federal claims have been dismissed in this suit.