UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| NICK J. MARTIN, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:13-cv-00016-SLC |
| GEORGE JONES, *et al.*, | ) |
| Defendants, | ) |

## OPINION AND ORDER

These Findings of Fact and Conclusions of Law follow a one-day bench trial held on March 27, 2018, on the sole claim remaining in this case: *pro se* Plaintiff Nick J. Martin's ("Martin") state-law claim against Defendants George Jones ("George"), Trent Jones ("Trent"), and Emma S. Jones ("Emma"), and Jones Auto and Jones Auto Repair (together, "Jones Auto"),[1] for unpaid wages for the period of April 22, 2012, through June 4, 2012.[2] (DE 179 at 1; DE 191). At the trial, Martin appeared *pro se*, and the Jones Defendants were represented by counsel. (DE 191).

After examining the trial record, considering the arguments of Martin and counsel, and determining the credibility of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a) based upon

---

[1] George, Trent, Emma, and Jones Auto will be referred to collectively herein as "the Jones Defendants." "Jones Auto" and "Jones Auto Repair" appear to be assumed names for Jones Auto Repair, Inc.

[2] This case was filed here based on subject matter jurisdiction under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 41). All of Martin's federal claims and his other state claims against the Jones Defendants were dismissed in the Court's ruling on summary judgment. (DE 112 at 23). However, for the reasons explained in the summary judgment ruling, the Court retained jurisdiction over Martin's pendant state-law claim against the Jones Defendants for unpaid wages for the period of April 22, 2012, through June 4, 2012, which was not a subject of the Jones Defendants' motion for summary judgment. (DE 112 at 11 n.6, 23 n.11).

a preponderance of the evidence.

## I.  FINDINGS OF FACT[3]

In his case in chief, Martin called Trent, George, Emma, and Martin Henry ("Henry"), a non-party, to testify, and Martin also testified on his own behalf.[4] Martin attempted to call Richard England, who was initially a defendant in this case but has since been dismissed (DE 175); England apparently was in the courtroom at the start of the trial, but had left the building by the time Martin attempted to call him as a witness. Neither party had subpoenaed England to testify. In its case in chief, the Jones Defendants called Trent and George to testify.

As to the credibility of the witnesses, George, who was the owner of Jones Auto during the relevant period, had some difficulty recalling facts and at times contradicted himself as well as documents of record, making his testimony less than credible.[5] Emma, who is George's wife and who worked part-time at Jones Auto in 2012, testified that she had memory problems, that 2012 was an emotional year for her because of her daughter's death, and that she could not recall who worked there during the relevant period or much about Jones Auto's operations at the time, making her testimony less than credible. Trent, who is George and

---

[3] Any Finding of Fact deemed to be a Conclusion of Law is hereby incorporated into Section II and any Conclusion of Law in Section II deemed to be a Finding of Fact is hereby incorporated into this Section.

[4] Martin states that he also sent subpoenas to four individuals who did not appear, Mia Faye England, Gaither Gray, Lauren Bowers, and Natasha Smith, and he asks that the Court issue warrants for their arrest. However, Martin sent these subpoenas to Jones Auto (DE 192), and there is no evidence that these individuals currently work at Jones Auto (and defense counsel stated that they do not). Therefore, there is no evidence that these individuals were properly served. Consequently, to the extent Martin is seeking to compel compliance with the subpoenas, the motion is DENIED. Martin also served a subpoena on the Mayor of Fort Wayne, but the Court granted the Mayor's motion to quash before the trial. (DE 188; DE 190).

[5] As just one example, at trial George denied ever filing a petition for a protective order against Martin or making statements that Martin had harassed him for money, but in his motion for summary judgment, George stated in an affidavit that he did exactly that, attaching the petition as an exhibit. (DE 98-1 at 2, 21-26).

Emma's son and who now runs an auto shop at Jones Auto's location, had less difficulty with recall, but he claimed lack of knowledge about the relevant time period because he did not work at Jones Auto in 2012, making his testimony not particularly helpful. Henry was a credible witness, but he had no knowledge relevant to this case, and thus, his testimony was unhelpful.[6] As to Martin, at times Martin testified with specificity about dates and details, but this was intermingled with testimony about alleged events involving the New Jersey port authority in the 1980s, claims of identity theft from 1986, conspiracy and bias theories, claims of stolen property, and other unrelated and irrelevant matters, making Martin's testimony also less than credible.

To the extent that the Court could discern any credible facts from the testimony of these witnesses,[7] the Court makes the following factual findings:[8] In 1984, Martin came to Fort Wayne from New York City by way of Pittsburgh, where he was incarcerated three times. Martin first met George in September 1986 when Martin was involved in a traffic accident near Jones Auto. Shortly after the accident, George or Jones Auto did some work on Martin's

---

[6] Henry had no idea why he was served with a subpoena in this case. While Henry had known Martin in the past through Henry's dealing with Coca-Cola 15 years ago, Henry had not seen Martin for many years and Henry had no knowledge about the events relating to Martin or Jones Auto during the relevant period.

[7] Only one exhibit was admitted at trial, Plaintiff's Exhibit 3, which was a print out from the Indiana Secretary of State's website as to Jones Auto Repair Inc. Martin attempted to put other exhibits into evidence, but defense counsel's objections of improper foundation were sustained and the other exhibits were not admitted.

[8] Martin reiterated at trial his mantra contained in many of his previous filings, arguing that all of the undersigned Magistrate Judge's rulings should be stricken due to alleged fraud of using a "false and factitious name" in her electronic signature on court documents, because she is allegedly biased toward or getting paid by the Jones Defendants, and because she is allegedly stealing from Martin or withholding his property. (*See, e.g.*, DE 127; DE 144; DE 169; DE 170; DE 181) After the trial, Martin filed a motion (DE 193) of that same theme, asking that the Court strike its prior rulings based on fraud and also objecting to England's bankruptcy case. Martin's arguments pertaining to the undersigned Magistrate Judge are patently frivolous, and Martin's arguments about the England's bankruptcy case are irrelevant, as the bankruptcy case is not before this Court. Therefore, Martin's motion to strike will be DENIED.

car. In 2005, Martin got divorced, and near that time, he took his car back to Jones Auto to get its gas tanks cleaned. In 2008, Martin lost his job as a truck driver with Brothers Express, Inc.

Jones Auto was located at 1701 South Anthony Boulevard, Fort Wayne, Indiana, during the relevant period. George solely owned Jones Auto,[9] but he and Emma owned the real estate together. George and Emma leased real estate located at 1717 South Anthony Boulevard to England, who operated his own business of auto body repair and painting at that location. George stated that he has known Martin a long time, and that over the years George would give Martin cash when Martin was "down and out," such as to help him pay his divorce lawyer, to get him out of jail, and to get his car out of the bull pen. As George succinctly put it: "I thought he was my friend."

Martin claims that he worked as a mechanic for George, Jones Auto, and England in 2009 and 2010, that he was promised a wage of $50 a day, and that he eventually quit in 2010 because he was not getting paid.[10] The Jones Defendants deny that Martin ever worked for Jones Auto as a mechanic. England, who did not testify at trial, answered in his Interrogatories that Martin helped him out occasionally with performing certain "vehicle bodywork services," but that Martin did so voluntarily with no expectation of payment. (DE 152 at 3). Nevertheless, England gratuitously paid Martin not more than $25 or $50 a day and less than $1000 in the aggregate for his assistance; England's payments were made in cash, and there were no records maintained of the payments or services. (DE 152 at 3).

---

[9] Jones Auto has since been dissolved, George has moved to Alabama, and Trent now operates his own auto repair business at the site.

[10] As already explained, Martin's claim of unpaid wages for 2009 and 2010 was dismissed in the Court's ruling on summary judgment on the basis of res judicata, and the information is included here only for context.

In November 2010, after being released from jail following a conviction for driving while intoxicated, Martin sued George, Jones Auto, and England in small claims court for unpaid wages. (DE 112 at 6). After a trial, a magistrate judge found that although Martin "went to work" for England in 2009 and again in 2010, there was never a written agreement between the parties, Martin was unable to establish any specific terms of a verbal agreement between the parties, and Martin failed to prove that these defendants owed him any specific amount in unpaid wages. (AR 98-1 at 8).

In June 2012, the City of Fort Wayne got on George about cleaning up trash at the back fence line of the Jones Auto site. Martin came by and offered to help George, stating that George did not need to pay him other than to give him some money for cigarettes and gas. Martin then helped George for two weeks by picking up trash at the back fence and putting it in a dumpster. In that two-week period, George gave Martin about $305 in cash in total, broken down as: $20 on each of four weekdays the first week, $110 on the first weekend, and $115 on the second weekend. (*See* DE 68 at 3 (George admitting in his answer that Martin performed "miscellaneous maintenance work" for him for which Martin was paid in kind or in cash an amount less than $600)). After two weeks, George told Martin that he could not use him any longer. Although Martin wanted to come up front and work as a mechanic, George told him that he could not use him around customers due to Martin exuding a "bad odor" that George attributed to crack cocaine.

George testified that Martin only asked for $20 a day, that Martin never objected to the amount paid at the time, that George paid these amounts in cash out of his own personal funds and not Jones Auto's funds, and that no written or computer records were maintained. Martin

5

also borrowed additional money from George during this time, as Martin claimed that he was short on funds even though he was receiving disability benefit payments. George claimed that Martin never paid him back for $165 of what Martin borrowed from him.

According to George, Martin only picked up trash for two weeks and never worked as a mechanic for Jones Auto in 2012. George said that he employed no mechanic, other than himself, for Jones Auto during the relevant period. Neither Trent nor Emma could recall who was working at Jones Auto in 2012, but both denied that Martin worked as a mechanic at Jones Auto during the relevant period. George denied that there was ever an agreement with Martin to provide Martin a specific amount of money.

Martin tells a different version of events. Martin testified that he saw George on the street in April 2012 and learned that George's stepdaughter had just passed away. Martin went to the viewing to pay his respects, and he then voluntarily watched the auto shop for George on the day of the funeral. Martin testified that after that, George asked him to come back to work at Jones Auto as a mechanic to cover the shop when George traveled to Alabama. Martin states that he then worked at Jones Auto from April 22, 2012, to June 4, 2012, working seven days a week for a sum of $50 a day.[11] Martin testified that George or Jones Auto paid him in cash $265 the first week, $220 the second week, and $100 the third week, but that Martin still borrowed another $20 a day from Jones because he was short on funds. Martin testified that despite George's payments, George or Jones Auto "shorted him" $250 a week for four weeks.

No written agreement ever existed between the parties pertaining to these events.

---

[11] Martin testified that he worked for General Motors as a mechanic in the past. He claimed that he has been "certified" since 1980, but that seemed to relate to a certification as a "lumber inspector," not as a mechanic.

## II. CONCLUSIONS OF LAW

As explained at the outset, the sole issue before the Court is whether the Jones Defendants owe Martin unpaid wages for the period of April 22, 2012, through June 4, 2012. Martin does not identify under what legal authority he is advancing this state-law claim, but presumably he is doing so as a breach of contract claim under common law, as a claim of quasi-contract under common law, or as a statutory claim under the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1 *et seq.*

"[A] contract of employment, out of which the relationship of employer and employee arises, may be either express or implied, verbal or written. *Davis v. All Am. Siding & Windows, Inc.*, 897 N.E.2d 936, 941-42 (Ind. Ct. App. 2008) (citation omitted). "[A] meeting of the minds is necessary to establish the employment relationship." *Id.* (citation omitted). "Mutual assent is a prerequisite to the creation of a contract." *Id.* (citation omitted). "An express or implied contract to pay for services rendered by a claimant will be found only when both the elements of intention to pay and expectation of compensation exist." *Schwartz v. Schwartz*, 773 N.E.2d 348, 355 (Ind. Ct. App. 2002) (citation omitted); *see also Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016) ("[T]o recover under implied contract, the plaintiff generally must establish that the defendant impliedly or expressly requested the benefits conferred." (citation omitted)).

"A quasi-contract, of course, is not a contract at all; it is a legal fiction invented by the common-law courts in order to permit a recovery . . . where, in fact, there is not a contract, but where the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise." *Bayh v. Sonnenburg*, 573 N.E.2d

398, 409 (Ind. 1991) (citation and internal quotations marks omitted). A quasi-contract is also referred to as unjust enrichment, quantum meruit, contract implied-in-law, or constructive contract. *Id*. "To prevail on a claim of unjust enrichment [or quasi-contract], a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Id*. "One who labors without an expectation of payment cannot recover in quasi-contract." *Id*. (citing *Biggerstaff v. Vanderburgh Humane Soc.*, 453 N.E.2d 363, 364 (Ind. Ct. App. 1983)). Stated simply, recovery is not available "where the benefit is officiously or gratuitously conferred." *Biggerstaff*, 453 N.E.2d at 364.

"The Wage Payment Statute is a limited purpose statute providing employees the right to receive wages in a timely fashion. The Statute does not create a right of payment in itself." *Black v. Emp. Sols., Inc.*, 725 N.E.2d 138, 141 (Ind. Ct. App. 2000). Rather, a plaintiff's right to maintain an action is contingent upon whether the defendant was his employer under common law. *Id*. "The determination whether an employer-employee relationship exists is a complex matter involving many factors." *Id.* at 141-42 (citation omitted); *see Mortg. Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 495 (Ind. 1995) (listing all of the facts that a court is to consider to determine whether a person is an employee versus an independent contractor). "[T]he primary consideration is the existence of a mutual belief that an employer-employee relationship exists." *Kahrs v. Conley*, 729 N.E.2d 191, 194 (Ind. Ct. App. 2000) (citation omitted).

Martin's claim for unpaid wages fails under *all* of these theories because he has not proven by a preponderance of the evidence that there was a meeting of the minds concerning

8

the agreement that he claims to exist, or that he, in fact, performed services for the Jones Defendants for which he did not receive payment. More pointedly, Martin has failed to establish that any of the Jones Defendants asked him to work as a mechanic during April 22, 2012, to June 4, 2012; promised him a wage of $50 a day; and that he did actually work for Jones Auto as a mechanic during this period. Although Martin tried to produce other testimony and admissible evidence to support his claim, he was unsuccessful in doing so, and the other witnesses denied or failed to corroborate his version of events. Consequently, Martin is left with only his own testimony to support his claim that he worked as a mechanic for George or Jones Auto seven days a week during this period. Martin's testimony, however, was less than credible, and while George's and Emma's testimony was also less than credible, it is *Martin* who bears the burden of proving his claim. *See, e.g.*, *Kishpaugh v. Odegard*, 17 N.E.3d 363, 374-75 (Ind. Ct. App. 2014) (articulating that it is the plaintiff who bears the burden of proof on a breach of contract claim); *Brown v. Guinn*, 970 N.E.2d 192, 196 (Ind. Ct. App. 2012) (same).

Having said that, Martin did prove that he performed some services and that George agreed to pay him some cash during the relevant period. George testified that Martin cleaned up the fence line at the Jones Auto site for two weeks during the relevant period in exchange for George giving Martin money for cigarettes and gas, and Martin did not particularly dispute this. For these services, George paid Martin—in cash, out of George's personal funds—$20 each of four weekdays during the first week, $110 for the first weekend, and $115 for the second weekend, for a total of $305. Even if this limited arrangement did establish some type of contractual relationship for the two-week period (versus George gratuitously giving Martin

9

cash to help his circumstances), Martin has not proven that he was owed the rate of $50 per day that he claims, rather than $20 per day that George paid, for Martin's services in performing the clean-up work. As such, Martin has not proven that George or Jones Auto breached an agreement by paying him $20 a day, rather than $50 a day, or that he is owed additional unpaid wages for his two-weeks of clean-up work. In short, there is no evidence that Martin and George had "a meeting of the minds" on the wage of $50 a day that Martin claims. *Davis*, 897 N.E.2d at 942.

At the end of the day, it is Martin, as the plaintiff, who bears the burden of proving by a preponderance of the evidence his claim that the Jones Defendants owe him unpaid wages for the period of April 22, 2012, through June 4, 2012. *See, e.g.*, *Kishpaugh*, 17 N.E.3d at 374-75; *Brown*, 970 N.E.2d at 196. Martin, however, has failed to carry his burden to show that he worked as a mechanic at Jones Auto during the relevant period and that the parties agreed on a wage of $50 a day. Consequently, Martin is not entitled to any damages, and a judgment in favor of the Jones Defendants is warranted.

### III. CONCLUSION

The Court concludes that Martin has not proven by a preponderance of the evidence his claim against the Jones Defendants for unpaid wages for the period of April 22, 2012, through June 4, 2012. The Clerk DIRECTS the Clerk to enter judgment in favor of the Jones Defendants and England (*see* DE 175), and against Martin. Martin's motion to strike (DE 193) is DENIED. The Clerk is DIRECTED to CLOSE this case.

SO ORDERED.

Entered this 30th day of March 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge